MILLS, Judge.
Deborah Crumpton appeals from a final judgment determining child custody, child support, and rights in personal property. Because we find no error in any of the four points raised on appeal, we affirm.
*316 Deborah and Robert Crumpton were married in 1973. Deborah had been married before and had custody of a child of the previous marriage. A daughter was born to the Crumptons in 1978. On 3 August 1981 Deborah took the two children and went with her former husband to the State of Washington.
The trial court found that “after some time and considerable effort” Robert found out that Deborah was in Washington. ■ Robert filed a petition for dissolution of marriage with the trial court on 15 December 1981 and made constructive service by publication. Deborah did not respond to the Notice of Action sent to her Washington address. She was not at the hearing on the petition held on 16 February 1982.
At that hearing the court decided to grant the divorce, but to retain jurisdiction to decide the other matters raised in the petition when Robert obtained service of process under the long-arm statute. Personal Service under the long-arm statute was made on 9 March 1982. Later, on 14 April 1982, the trial court entered partial final judgment dissolving the marriage and continuing the other issues until Robert could obtain service of process under the long-arm statute.
On 31 March 1982, Deborah made motions for entry of a final judgment, to quash service of process, and to set aside default. The trial court held a hearing on 20 April 1982 and two days later entered an order setting aside the default, but otherwise denying Deborah’s motions.
Deborah finally responded to Robert’s petition on 6 May 1982. She counter-petitioned for child custody, child support, and special equity in property. The final hearing was held on 2 September 1982 and on 10 September 1982 the court entered the final judgment which is the subject of this appeal.
The final judgment provided that the Crumpton’s child would live with Deborah, but also stated that both parents had responsibility for the child and that the child’s right to have access to Robert should be liberally construed. The final judgment enjoined either parent from removing their child from Florida for more than three consecutive weeks without prior court permission. The final judgment provided further that Robert would pay $32.50 weekly child support, that personal property would be divided equally, and that all other relief requested was denied.
I
Deborah first contends that the trial court erred when it deferred consideration of the custody and property issues in order to give Robert an opportunity to obtain service of process under the long-arm statute. She asserts that this is an improper bifurcation of the issues raised in the dissolution petition.
We recognize that splitting the issues in a divorce proceeding is discouraged. See, Claughton v. Claughton, 393 So.2d 1061 (Fla.1980) (bifurcation proper only when clearly necessary for the best interest of the parties or their children); Glazer v. Glazer, 394 So.2d 140 (Fla. 4th DCA 1981) (bifurcation proper only in exceptional circumstances); Weasel v. Weasel, 419 So.2d 698 (Fla. 4th DCA 1982) (bifurcation proper only when refusal to bifurcate would result in hardship on the movant equal to or more than the damages and complications arising from bifurcation). Nevertheless, bifurcation in this instance was proper.
If the trial court had granted the divorce and simply refused to rule on the other issues raised in the petition, there would have been no custody determination and hence no inquiry into the best interest of the child. In addition, there would have been no property settlement.
Judicial discouragement of bifurcation in divorce proceedings is based on the belief that it is usually faster and cheaper to decide divorce and related issues at the same time. But when the trial court does not have jurisdiction to decide related issues which in all fairness should be decided, there is no reason not to bifurcate. *317 This was an exceptional circumstance justifying bifurcation.
II
Deborah also contends that the provision in the final judgment enjoining the parties from removing their child from Florida for more than three consecutive weeks without prior court authorization was an unconstitutional interference with citizens of another state by the State of Florida. However, if the trial court had jurisdiction to determine child custody, it had the authority to act in the best interest of the child, including requiring that the child live in Florida. See, Brandon v. Faulk, 326 So.2d 76 (Fla. 1st DCA 1976).
Section 61.1308, Florida Statutes (1981) provides in part:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(b) It is in the best interest of the child that a court of this state assume jurisdiction because:
1. The child and his parents, or the child and at least one contestant, have a significant connection with this state, and
2. There is available in this state substantial evidence concerning the child’s present or future care, protection, training, and personal relationships.
Pursuant to this statutory provision, the trial court had jurisdiction to determine the custody of the Crumpton’s child and related matters. Robert and Deborah were married in Florida and lived together in Florida as husband and wife for over eight years. Their child was born in Florida and lived with her parents there until Deborah took her to Washington. Deborah and the child had been living in Washington for less than a year when Deborah was served under the long-arm statute. No other court had assumed jurisdiction over the matter. Both parents and the child had a significant connection with Florida and because the family had lived together in Florida for a number of years, substantial evi-denee concerning the welfare of the child was available in Florida. In addition, Deborah testified that she was willing to remain in Florida.
III
The third contention on appeal is that the trial court erred because it did not award travel expenses, attorney’s fees and costs to Deborah. Deborah asserts that the evidence, including the testimony given at the final hearing on 2 September 1982, clearly showed her need for such an award and Robert’s ability to pay.
Unfortunately, there is no transcript of the final hearing. The record only contains the parties’ financial affidavits. These affidavits indicate that neither party is able to pay the other’s expenses. Based on the record before us, we cannot say that the trial court abused its discretion in this regard.
IV
The final contention on appeal is that the trial court erred in failing to specifically address in its final judgment Deborah’s requests for alimony and disposition of personal property. The final judgment provided that all personal property would be divided equally and that all relief not granted was denied. Deborah contends that the trial court’s failure to specifically rule on each request was an abdication of the judicial function.
A trial court has a duty to decide issues properly before it. Malone v. Meres, 109 So. 677 (Fla.1926). But that duty does not require a court to address each issue individually in its adjudication. A statement that all relief not granted is denied is sufficient; although it would be helpful to the parties and the court reviewing the judgment to know the specific reason for the trial court’s denial of requested relief.
AFFIRMED.
THOMPSON and WIGGINTON, JJ„ concur.